IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DEBORAH J.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 20-1117-JWL |
| ANDREW M. SAUL, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) step two evaluation, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.   Background**

Plaintiff protectively filed an application for DIB on September 28, 2017.  (R. 15). After exhausting administrative remedies before the Social Security Administration

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in failing to discuss whether degenerative changes and facet arthropathy of her lumbar spine or spondylosis of her midthoracic spine are medically determinable impairments in the circumstances of this case.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

2

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses the claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court finds no error in the ALJ's step two consideration or evaluation.

## II.   Discussion

Plaintiff claims the ALJ erred in failing to discuss whether degenerative changes and facet arthropathy of her lumbar spine or spondylosis of her midthoracic spine are medically determinable impairments.  This is so, in her view, because her physician diagnosed her with low back pain based on her complaints of left hip pain and tenderness over the left gluteus.  (Pl. Br. 12) (citing R. 694-95).  She argues that an x-ray of her lumbar spine taken the same day but limited due to body habitus "revealed '[p]robable lumbosacral transitional vertebra' and '[h]ypertrophic facet joint degenerative changes at L4-L5 and L5-S1,'" and the "impression was 'degenerative changes with facet arthropathy.'"  Id. (quoting R. 976).  She acknowledges her low back pain improved "but she was prescribed Naproxen and told to use warm moist heat and topical analgesics for

4

pain," her physician "continued to include "low back pain" as a current problem in [] subsequent visits," and her primary care providers in succession "continued to include low back pain or arthritis as a current problem." (Pl. Br. 13). She notes that she later went "to the emergency room because of back pain that radiated to her chest, [and reported] a history of 'lower back arthritis.'" Id. (citing R. 1341). She points out that a CT scan taken at that time "revealed spondylosis of the midthoracic spine, and her discharge diagnosis included 'lower back arthritis.'" Id. (citing R. 1341, 1344). She argues, "Diagnostic imaging coupled with a diagnosis of low back pain or arthritis was sufficient to establish [her] degenerative changes of the spine and spondylosis of the midthoracic spine as severe impairments prior to her date last insured." Id.

The Commissioner argues that Plaintiff has the burden, which she did not meet here, to establish disability under the Act and regulations. He argues the ALJ properly considered the record evidence, found Plaintiff's impairments allow her to perform a range of sedentary work, and she does not have specific additional spinal limitations. Specifically, he argues symptoms cannot demonstrate a medically determinable impairment, but it can only be assessed based upon signs and laboratory findings. (Comm'r Br. 8-9). He argues "Plaintiff's reliance on ostensibly less favorable functional findings and lumbar spine and thoracic spine imaging is misplaced" because "the issue is not whether Plaintiff's position is supported by substantial evidence, but whether the ALJ's decision is thus supported." Id. at 9. The Commissioner argues it is not the diagnosis of an impairment, but "the resultant functional limitations that the Commissioner uses to formulate a claimant's RFC," and even if the ALJ should have

5

addressed the imaging Plaintiff cites, he did note that "Plaintiff demonstrated no spinal functional limitations related to such findings." (Comm'r Br. 11). The Commissioner concludes:

> The ALJ's RFC assessment for a range of sedentary work without specific additional spinal limitations was supported by the favorable medical findings and other evidence discussed above. Consequently, Plaintiff's contention that spinal imaging and diagnoses established "severe" spinal disorders during the relevant time period lack merit. The ALJ did not commit reversible error in failing to find that Plaintiff had medically determinable spine disorders during the relevant time period. The ALJ's RFC assessment was reasonable and supported by substantial evidence.

Id. at 15 (citations omitted). In her Reply Brief Plaintiff argues that the ALJ made no reference to or discussion of the spine impairments or diagnostic imaging at issue here and the Commissioner's Brief provides merely post hoc rationalization in an attempt to rescue the ALJ's erroneous evaluation.

## A.     The Legal Standard Applicable at Step Two

The determination at step two is based on medical factors alone, and not on vocational factors such as age, education, or work experience. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that she had an impairment and how severe it was during the time the claimant alleges she was disabled. 20 C.F.R. § 404.1512; see also, 20 C.F.R. § 404.1521 (a medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."); 404.1529(b)

(explaining that symptoms may only be considered when they reasonably result from a medically determinable impairment), 404.1545(a)(2) (explaining that when assessing RFC the Commissioner will consider all medically determinable impairments, even those that are not severe).  Alleged limitations attributable to impairments which are not medically determinable must not be considered.  Rutherford v. Barnhart, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe"); Gibbons v. Barnhart, 85 F. App'x 88, 91 (10th Cir. 2003) ("the ALJ must consider only limitations and restrictions attributable to medically determinable impairments.") (internal quotation omitted).

An impairment is not considered severe if it does not significantly limit Plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, Plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities.  Williams, 844 F.2d at 751.  However, she must show more than the mere presence of a condition or ailment.  Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on Plaintiff's ability to perform basic work activities, it could not prevent Plaintiff from

engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

### B.     The ALJ's Step Two Findings

The ALJ found Plaintiff has the severe impairments of: obesity; history of dislocated right knee; history of otorrhea and encephalocele, status post repair; and obstructive sleep apnea. (R. 17). He found she has certain medically determinable impairments which were not severe within the meaning of the Act and regulations: hypotension, thyroid nodules, pre-diabetes mellitus, pseudotumor cerebri, and history of pulmonary embolism. Id. He explained he also found certain alleged impairments not medically determinable impairments:

> The claimant's alleged knee osteoarthritis and memory loss were not medically determinable impairments from the alleged onset date of November 25, 2009 through the date last insured of September 30, 2017. "Your symptoms ... will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."

Id. at 19 (quoting 20 C.F.R. § 404.1529(b)).

As relevant to the issue presented here, the ALJ also discussed Plaintiff's allegations of symptoms and made findings regarding their consistency with the record evidence. He noted: she alleged low back and hip pain and

> described pain in her lower back and right leg, which necessitate she lie down and elevate her legs periodically throughout the day. The back pain is reported due to a combination of bone density loss in her lower back and

> hip, and arthritis in her back. … She testified that, on an average day, she
> can walk for between ten and 15 minutes at a time, can stand for between
> ten and 15 minutes at a time, can sit for between ten and 15 minutes and
> [sic] a time, and does not lift more than ten pounds.

(R. 22). He found her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id.

The ALJ provided an extensive explanation of his reasons for finding Plaintiff's allegations of symptoms inconsistent with the record evidence, which is reproduced here only in relevant part:

> the claimant's allegations are not fully consistent with or supported by the
> medical evidence of record. From the alleged onset date of disability
> through the date last insured, the claimant demonstrated short-term
> abnormalities, rather than chronic or persistent ones. Indeed, the vast
> majority of examinations during the relevant period only yielded evidence
> of an obese body habitus. Although the claimant sustained a right knee
> dislocation on the alleged onset date of disability, she presented with only
> some intermittent abnormalities for a period of approximately one year.
> The majority of examinations from that period yielded normal findings,
> including a stable, unassisted gait.
>
> \*\*\*
>
> the medical evidence does not reasonably support a conclusion that the
> claimant had any greater functional limitations than are included in the
> above residual functional capacity prior to the expiration of her insured
> status. For example, the record does not document exacerbations of the
> claimant's medical conditions that occurred with such frequency as would
> reasonably give rise to a conclusion that the claimant would have been
> absent from work with any regularity. Nor does the record document the
> claimant presenting with objectively appreciably [sic] fatigue or other
> abnormalities that would support a conclusion that she needed to lie down
> during the course of a normal workday. I have also taken note that the
> record does not document abnormalities that would support a finding that
> the claimant needed to alternate between sitting, standing, and walking
> positions throughout the course of a normal workday, such as unusual

> discomfort or abnormalities affecting her lower extremities (e.g., swelling or edema) with sitting for two-hour periods. … Furthermore, the claimant did not present with pain behavior … that would support a finding that she either required extra work breaks in addition to, or would have been off-task beyond, what could be accommodated by the work breaks customarily offered by competitive employment.
>
> … I have given due consideration to her work record and activities of daily living.  First, although the claimant has a fair work record, she has worked since the alleged onset date of disability.  As is noted above, the claimant began to work one day per week performing data entry work with her church during December 2014. (Exhibits 10E/1, 15E/4).  She reported that, on that one day each week, she sits for seven hours and walks for one hour.  The claimant reported spending six hours writing, typing, or handling small objects.  (Exhibit 4E/6).  She reported continuing to do that work until after the date last insured. … [T]he vast majority of the medical records in evidence document no significant abnormalities other than the claimant's obese body habitus.  The weight of the evidence indicates that it is more likely than not that, to the extent the claimant's activities of daily living are limited, this is due primarily to non-disability factors, such as a lifestyle choice, rather than being the necessary consequence of her impairments.
>
> After a careful review of the record, I find that the claimant's allegations regarding the intensity, persistence, and limiting effects of her impairments are not fully consistent with or supported by the record.

(R. 24-25).

### C.    Analysis

The Commissioner's argument ("Plaintiff's reliance on ostensibly less favorable functional findings and lumbar spine and thoracic spine imaging is misplaced" because "the issue is not whether Plaintiff's position is supported by substantial evidence, but whether the ALJ's decision is thus supported") misses the legal standard applicable to judicial review of a decision of the Commissioner.  As the Commissioner's argument recognizes, the court must determine whether substantial record evidence supports the Commissioner's decision, not Plaintiff's view of what the "correct" decision is.  But, in

this case the Commissioner ignores the other prong of judicial review—whether the Commissioner (the ALJ in this case) applied the correct legal standard.  That, however, is the essence of Plaintiff's argument here—that the ALJ applied the incorrect legal standard and did not properly consider whether her back pain along with the alleged abnormalities revealed by diagnostic imaging presented a medically determinable impairment(s) and whether the ALJ properly considered that impairment(s).  Nonetheless, the court has considered Plaintiff's actual argument but finds no error in the ALJ's step two consideration.

As noted above, in order to find a medically determinable impairment "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  The SSA "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  Id.  "Pain," such as low back pain or hip pain is a symptom, not an impairment.  It cannot be established by objective medical evidence.  The x-ray and CT scan relied upon by Plaintiff, on the other hand are objective medical evidence, and Plaintiff makes a good argument from which an acceptable medical source might find a medically determinable impairment and that Plaintiff's alleged low back pain might be attributable to that impairment.  But, neither Plaintiff, her attorney, the ALJ, nor this court is an acceptable medical sources qualified to find an impairment from such evidence.

The first occurrence on which Plaintiff relies involved an office visit to Plaintiff's primary care physician in September 2014.  (R. 693 (vitals entered at 10:02 AM)).

11

Plaintiff explained that she had had left hip pain at one point several years earlier which had been relieved with Naprosyn but had no further problems until 3 days earlier.  (R. 693).  She reported pain in the left lower buttock region which didn't radiate down the leg.  Id.  Physical exam revealed "No point tenderness of the L-spine.  Some tenderness over the L-gluteus.  SLR [straight leg raise] negative.  No motosensory deficits.  Reflexes intact."  Id. at 694.  The physician noted "Problem # 1" as "Low back pain" and "Problem # 2" as Hip pain, left."  Id. at 695.  The physician noted for both problems that she "Assessed as:  Comment Only."  Id.  For each she prescribed Naproxen and ordered x-rays.  Id.  Contrary to Plaintiff's Brief, the record does not contain a diagnosis of low back pain or hip pain.  Moreover, both are symptoms which cannot be diagnosed.  The x-ray on which Plaintiff relies was taken the same day and was read by Dr. Caterine, apparently a radiologist, at 1:13 PM, and likely after Plaintiff had left.  (R. 976).  As Plaintiff acknowledges, the x-ray notes "Limited evaluation due to body habitus."  Id.  Moreover, the full "IMPRESSION:" states, "Degenerative changes with facet arthropathy.  No acute abnormality, left hip."  Id.

      The second occurrence relied upon involved Plaintiff's visit to the emergency room in April 2017 complaining of low back pain which radiated to her bilateral chest and which was "very similar to when she had PE [pulmonary embolism] and prompted her to come to the hospital for evaluation.  ER work up was unremarkable."  (R. 1341).  The complete "Impression:" section of the CT report upon which she relies is as follows:

> 15 mm well-circumscribed low-density lesion in the inferior pole of the right lobe of the thyroid gland.  Comparison with the previous CT and with current ultrasound is recommended

>Negative CT angiography for pulmonary emboli.  Comparison with previous CT angiogram should be considered.
>
>Spondylosis of the midthoracic spine.

(R. 1343-44).  Although Plaintiff is correct that the "Discharge diagnosis" included "lower back arthritis," the court notes that the "Admission diagnosis" was identical in every detail with the "Discharge diagnosis."  Id. at 1341.  Likely this is so because the "Hospital course:" states, "Patient is a 51 y/o female with … and lower back arthritis."  Id.

In these circumstances, the evidence does not demonstrate a medically determinable impairment suggested by an acceptable medical source.  Further, as noted above the ALJ discounted Plaintiff's allegations of symptoms and found them inconsistent with the record evidence in an extensive explanation quoted above in relevant part.  And Plaintiff relies upon her allegations of disabling symptoms in arguing that the ALJ should have discussed whether the evidence demonstrated a medically determinable back impairment but does not allege error in the ALJ's finding her allegations of symptoms are inconsistent with the record evidence.  Moreover, even if it was error for the ALJ not to consider or discuss the evidence at issue as establishing an impairment, the error was harmless because substantial evidence (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) supports the ALJ's RFC finding.  And Plaintiff does not point to record evidence compelling a finding of greater limitations.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 29, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**